IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| MISNY & ASSOCIATES CO., L.P.A., | CASE NO. 1: 15 CV 681 |
| Plaintiff, | |
| | JUDGE DONALD C. NUGENT |
| vs. | |
| AYLSTOCK, WITKIN, KREIS & OVERHOLTZ, PLLC, | MEMORANDUM OPINION |
| Defendant. | |

This matter is before the Court upon Defendant's Motion for Summary Judgment (ECF #51) on all of the claims in Plaintiff's First Amended Complaint and Plaintiff's Motion for Summary Judgment on Defendant's Counterclaims for Quantum Meruit and Declaratory Relief and for Default Judgment. (ECF#48). Also before the Court is Defendant's Motion to Strike the Declaration of Timothy Misny. (ECF #60). All of the motions have been fully briefed and are ripe for review.

## FACTUAL AND PROCEDURAL BACKGROUND[1]

This matter arises out of a contract entered into by the parties. In October 2008, Plaintiff Misny & Associates Co., LPA ("Misny"), an Ohio law firm and Defendant Aylstock, Witkin, Kreis & Overholtz, PLLC ("AWKO"), a Florida law firm, executed a Mass Tort Referral Fee

---

[1] Except as otherwise cited, the factual summary is based on the Amended Complaint and the parties' statements of fact. Those material facts which are controverted and supported by deposition testimony, affidavit, or other evidence are stated in the light most favorable to the non-moving party.

Agreement (the "Agreement") in which Misny agreed to refer all of its mass tort claimants to AWKO. The potential mass tort claimants were persons who had been injured from the use of certain pharmaceuticals including Avandia, Prempro ("HRT" or Hormone Replacement Therapy), Digitek, Medtronic, Chantix, Fleet (OSP), Fosamax, Heparin, Hydroxycut, Levaquin, Remicade, Zicaqm and Trasylol and/or medical devices. In return for these referrals Misny would receive compensation as established in the Agreement.

Believing that Defendant failed to pay the full fees owed to it under the Agreement, Misny filed suit against AWKO on March 8, 2015 in the Court of Common Pleas for Cuyahoga County. Defendant removed the case to this Court on April 7, 2015. Plaintiff also named three individual Defendants, two AWKO partners who live in Florida and Benjamin Anderson, an Ohio attorney who AWKO asserted was a sham defendant joined to defeat diversity jurisdiction. Plaintiff filed a motion to remand, Defendant filed a motion to dismiss the individual Defendants and a motion to transfer venue to Florida. The parties filed a Joint Stipulation on July 22, 2015, withdrawing Plaintiff's motion to remand as well as Defendant's motions to transfer venue to Florida and to dismiss Defendant Anderson. The parties agreed that the action would remain in this Court and that the individual Defendants would be dismissed.

Plaintiff's Amended Complaint asserts claims of breach of contract, conversion, quantum meruit and fraud. The gist of the breach of contract claim is Plaintiff's assertion that Defendant breached the Agreement by delaying prosecution and resolution of claims in order to reduce Misny's portion of the fee split on the declining fee scale set up in the Agreement. Misny alleges that consistent with the Agreement, he contacted AWKO in August 2011, to determine the exact amount of the Misny Firm's fee. After significant negotiation Misny alleges that the parties

determined that going forward Misny would receive a flat fee of 42.5% of fees on all matters subject to the Agreement regardless of the time needed to resolve the cases. Misny alleges that Defendant paid it 42.5% of gross attorney fees on all matters except HRT matters, on which it only received 35% of the attorney fees. As a result Misny claims that almost $1.3 million dollars is now owed to it. (Amended Complaint, ECF #26, ¶¶ 23-33). Plaintiff's conversion claim asserts that Defendant interfered with Misny's right to possess its own monies and thus committed conversion by withholding or absconding with $1.3 million belonging to Misny. (Id, at ¶35) In Misny's Quantum Meruit claim, Misny asserts that it invested nearly $3 million on advertising and getting clients with mass tort claims, including HRT claims, which ultimately generated millions of dollars in attorney fees for Defendant. Thus, Defendant's retention of the 7.5% of attorney fees generated in HRT cases is unjust and Misny is entitled to a remedy in Quantum Meruit for no less than approximately $1.3 million. (Id., ¶¶ 38-41) Finally, Misny's fraud claim is based on representations allegedly made by Defendant to Misny in 2009 that it would provide Misny with 42.5% of the gross attorney fees from any recovery earned on matters where the parties were joint counsel, but Defendant knew the representation was false at the time it was made and never intended to pay Misny 42.5% of attorney fees in the HRT cases.(Id..at ¶¶ 44- 43)[2] Rather, Misny contends that instead of trying the mass tort cases themselves as was represented to Misny, Defendant always intended to and did engage another law firm to try mass tort cases without Misny's knowledge or approval. Plaintiff further alleges that Defendant always intended to pay

---

[2]

While the Amended Complaint asserts that Defendant agreed to pay Misny 42.5% of attorney fees in HRT cases in 2009, that contradicts the terms of the Agreement entered in 2009 and the deposition testimony of Mr. Misny which states that the agreement to pay Misny 42.5% of fees on jointly represented cases was not made until after August 2011.

another law firm the difference in attorney fees percentage, 7.5%, to try certain HRT cases. (Id., ¶¶ 45-46) As a result of the fraud, Misny alleges that Defendant owes Misny at least 1.3 million in legal fees earned on HRT matters jointly represented by the Parties. (Id., ¶¶ 43-49).

Defendant asserts two counterclaims against Misny. The first counterclaim seeks a declaratory judgment that under the terms of the Agreement between the Parties, Misny is entitled to no more that 35% of the attorneys' fees earned in connection with HRT claims referred by Misny absent the express written agreement of both parties. (ECF #37, ¶¶ 17-23) Defendant's second counterclaim is for quantum meruit in which it asserts that it expended substantial resources in representing the mass tort claimants referred by Misny, performing substantially all of the legal work in connection with the claims. As such Defendant contends that Misny received a disproportionate share of the legal fees based on the minimal legal services Misny performed on the mass tort claims which it would be unjust for Misny to retain under these circumstances. Thus, if the Referral Fee Agreement is found to be invalid or otherwise unenforceable, Defendant alleges that it is entitled to a remedy in quantum meruit through the disgorgement of attorneys' fees received but not earned by Misny in connection with the mass tort claimants referred to Defendant by Misny.(Id., ¶¶ 25-33)

## STANDARD OF REVIEW

Summary judgment is appropriate when the court is satisfied "that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Accordingly, proper summary judgment analysis entails "the threshold inquiry of determining whether there is the need for a trial

– whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they many reasonably be resolved in favor of either party." *Id.* at 250. It is with these standards in mind that the instant Motion must be decided.

## ANALYSIS

### 1. Defendant's Motion for Summary Judgment

Defendant contends that summary judgment should be granted in its favor on all of Plaintiff's claims. First, Defendant asserts that Misny's breach of contract claim is barred by the terms of the Agreement. In support of this argument, Defendant argues that Misny's claim is based upon Defendant's breach of the alleged 2011 oral agreement in which Defendant agreed to pay Misny 42.5% of the attorneys' fees generated by HRT cases. The Agreement between the parties contains an integration clause which states that the "agreement shall constitute the entire agreement between the parties. No other agreement, whether oral or in writing shall supersede or modify this agreement without the express written agreement of both parties." (Agreement, ¶ 9, ECF #48-1) Thus, Defendant asserts that Plaintiff's claim that it breached an oral modification to the Agreement must fail as the Agreement specifically prohibits oral modifications.

Misny denies that it is trying to enforce an oral modification to the parties' Agreement. Rather, Plaintiff asserts that his claim is consistent with paragraph 6 of the Agreement which sets out the parties agreement as to the division of fees. Plaintiff's position is based only upon the declining scale of fees over time set forth in paragraphs 6a through 6d. Paragraph 6, in its entirety, provides:

> Misny and AWKO shall share fees, if any, generated from the
> representation of the mass tort claimants according to the equities and their
> relative contributions to the prosecution of the mass tort clients' cases. It

> shall be assumed, subject to discussion between the parties of all applicable facts and circumstances, that within the first year after AWKO accepts representation of a mass tort claimant that the equities and proportional contribution of AWKO and Misny will result in an equal division of the fees, if any, generated from the resolution of the mass tort claimant case. After one year of representation by AWKO, that assumption shall no longer apply. Instead, the parties agree to adjust the fee division based [sic] their relative contributions to the representation of the mass tort claimant case and the equities. Specifically, but without limiting the facts and circumstances to be considered, the parties will consider the financial costs that each [sic] them have incurred related to the project, the attorney and staff resources that have been devoted to the project, the opportunity cost incurred as a result of handling the project, the resources necessary to achieve success on the project and the time required to complete the project. Its is anticipated that after one year of representation, the relative contributions of the parties and equities will begin to suggest that a greater percentage of the fee, if any, be given to AWKO. Notwithstanding the foregoing, Misny shall not receive less of the fees than is indicated in the schedule below, and the exact amount shall, again, be determined based upon the parties relative contribution to the prosecution of the mass tort claimants case and the equities associated with the project:
> a. For any mass tort claimant case which is settled within one year of AWKO's acceptance thereof, Misny shall receive no less than 50% of the fees generated therefrom;
> b. For any mass tort claimant case that settles more than one year but less than two years after AWKO's acceptance thereof, Misny shall receive no less than 40% of the fees generated therefrom;
> c. For any mass tort claimant case that settles more than two years but less than three years after AWKO's acceptance thereof, Misny shall receive no less than 35% of the fees generated therefrom; and
> d. For any mass tort claimant case that settles more than three years after AWKO's acceptance thereof, Misny shall receive no less than 35% of the fees generated therefrom absent exceptional circumstances and the agreement of the parties.

(Emphasis added.) Even a cursory reading of Paragraph 6 shows that the parties intended to discuss and potentially adjust the distribution of fees as the circumstances mentioned in Paragraph 6 developed. Thus, Plaintiff's breach of contract claim is based upon his contention that in accordance with Paragraph 6, the parties agreed the "exact amount" of Misny's fee was to

be 42.5% of the gross attorney's fees of the mass tort cases. Whether the parties actually made this "joint agreement" is a question of fact for trial.

Next Defendant contends that Plaintiff's conversion and fraud claims are an attempt to recast a breach of contract claim as tort claims and both seek damages which are exactly duplicative of the damages alleged in Plaintiff's contract claim. Ohio law holds that the existence of a claim sounding in contract generally excludes recovery under a theory of tort. *Wolfe v. Continental Cas. Co.*, 647 F.2d 705, 710 (6th Cir. 1981); *Textron Fin. Corp. v. Nationwide Mut. Ins. Co.*, 115 Ohio App.3d 137, 684 N.E.2d 1261 (Ohio Ct. App. 1996).

> In Ohio, a breach of contract does not create a tort claim. *Wolfe v. Continental Cas. Co.* (C.A.6, 1981), 647 F.2d 705, 710. Generally, "the existence of a contract action * * * excludes the opportunity to present the same case as a tort claim." *Id.* A tort claim based upon the same actions as those upon which a claim of contract breach is based will exist independently of the contract action only if the breaching party also breaches a duty owed separately from that created by the contract, that is, a duty owed even if no contract existed.

*Textron Fin. Corp.*, 115 Ohio App. 3d 137, 151, 684 N.E.2d 1261, 1270. Moreover, a tort claim must allege damages that are separate and distinct from the damages resulting from breach of contract.

> In addition to containing a duty independent of that created by contract, an action arising out of contract which is also based upon tortious conduct must include actual damages attributable to the wrongful acts of the alleged tortfeasor which are *in addition* to those attributable to the breach of the contract. *Cincinnati Gas & Elec. Co. v. Gen. Elec. Co.* (S.D.Ohio 1986), 656 F.Supp. 49, 63. See, also, *Davison Fuel & Dock Co. v. Pickands Mather & Co.* (1977), 54 Ohio App.2d 177, 182, 8 O.O.3d 324, 327, 376 N.E.2d 965, 968; *McCarthy, Lebit, Crystal & Haiman Co., L.P.A. v. First Union Mgt., Inc.* (1993), 87 Ohio App.3d 613, 629, 622 N.E.2d 1093, 1103 (stating damages recoverable for negligent misrepresentation do not include those derived from the benefit of the plaintiff's contract with the defendant).

*Textron Fin. Corp.*, 115 Ohio App. 3d at 151, 684 N.E.2d at 1271. In the case at bar, there is no evidence that the damages alleged in Misny's tort claims are different than the damages it seeks in its breach of contract claim. In all claims Misny seeks the alleged $1.3 million dollars that it asserts that it should have been paid in attorney fees from the HRT cases.

Misny contends that its conversion and fraud claims are intentional torts that do not sound in negligence and thus are not barred by the economic loss rule because "the economic loss rule prevents recovery in negligence of purely economic loss, not recovery under an intentional tort theory for economic loss." *Reengineering Consultants, Ltd. v. EMC Corp.*, 2009 WL 113058 at *6. While the Court in *Reengineering Consultants* declined to dismiss the Plaintiff's tortious interference with business relations claim under the economic loss rule, it instead dismissed Plaintiff's tortious interference claim because the existence of the contract between the parties precluded Plaintiff's tort claim. Specifically, since Plaintiff did not allege that Defendant's breach of the contract was the result of Defendant's motive to interfere with Plaintiff's business, Plaintiff did not state a claim for tortious interference with business relations. *Id* at *6-*7.

It is clear that Plaintiff's conversion claim is merely a re-stated breach of contract claim. The property allegedly converted by Defendant is the $1.3 million in attorney fees allegedly withheld under the contract between the parties. Plaintiff would only have an ownership interest in those funds if it prevails on its breach of contract claim. As such, Plaintiff's conversion claim will be dismissed.

With respect to its fraud claim, Misny argues that the alleged misrepresentations forming the basis of its fraud claim here are not contract obligations or breaches of the Agreement. Apparently forgoing the alleged representation cited in the Fraud claim in his Amended

Complaint asserting the "2009 representation that Defendant would provide Plaintiff with 42.5% of gross attorney fees" (Amended Compl., ¶ 43) as a basis for the fraud claim, Misny now asserts that the misrepresentations that form the basis of his fraud claim are (1) Defendant's representation that it would diligently pursue cases made before the parties entered their Agreement; and (2) Defendant's repeated statements that it did not and would not bring other counsel in to try or negotiate settlements, that could have diminished Misny's fee.

With respect to the first alleged misrepresentation that Defendant represented that it would diligently pursue the cases, Defendant notes that the only support for that allegation is the unsigned, unsworn declaration of Mr. Misny. Further, Defendant notes that the declaration is inconsistent with Mr. Misny's prior deposition testimony where he failed to recount any such misrepresentation when he was exhaustively questioned about the purported bases of Plaintiff's fraud claim. As such, Defendant moves that the declaration of Mr. Misny be stricken as both noncompliant with 28 U.S.C. § 1746 and as inconsistent with Mr. Misny's prior deposition testimony. In response to the Motion to Strike, Plaintiff submits another declaration from Mr. Misny that cures his first declaration. Plaintiff further notes that the same or similar Misny declaration that contained the same allegation that Defendant represented that it would diligently pursue the mass tort cases and use their best efforts to litigate, resolve and try the matters expeditiously, was made and filed on June 24, 2015, well before the deposition of Mr. Misny. Accordingly, the Motion to Strike Mr. Misny's declaration is denied.

Defendant argues that the fraud claim fails even if the Misny Declaration is not stricken. The first alleged misrepresentation about working diligently to resolve the mass tort cases expeditiously is alleged to have been made well before the Agreement was entered and before

performance was made. Under Ohio law, a party's representation about its future conduct cannot serve as the basis for a fraud claim. *King v. Hertz Corp.*, 1:09 cv 2674, 2011 WL 1297266 at *6 (N.D. Ohio, Mar. 31, 2011). An exception to this rule is recognized if an individual makes a promise concerning a future action, and at the time of making the promise, had no intention of keeping the promise. *Id., citing Williams v. Edwards*, 129 Ohio App.3d 116, 124 (Ohio App. 1998). The present intent not to perform a promise is the basis of a claim for promissory fraud and fraudulent inducement. *Id., citing Langford v. Sloan*, 162 Ohio App. 3d 263, 268 (Ohio 2nd App. 2005). Here, Plaintiff offers no proof, other than Mr. Misny's unsupported assertions, that Defendant made this representation, or even if made, had no intention of keeping such promise at the time it was made, *i.e.*, that the mass tort cases that would be referred by Misny under the Agreement they were discussing, would be handled expeditiously. Similarly, Misny offers no evidence that this alleged misrepresentation caused the damages he seeks in his fraud claim–the "approximately $1.3 million in legal fees earned on HRT matters jointly represented by the parties." (Id. ¶47). Thus, this alleged misrepresentation cannot form the basis of Plaintiff's fraud claim.

The only other misrepresentation asserted by Plaintiff to support its fraud claim is Defendant's misrepresentation that its lawyers would try the mass tort cases as needed, and that they would not engage any other law firm to try the cases. Defendant admits that Defendant associated with attorney Zoe Littlepage to assist in the litigation of mass tort claims, particularly in the context of multi-district litigation. However, the undisputed deposition testimony of AWKO partners Justin Witkin and Bryan Aylstock show that the involvement of Ms. Littlepage had no impact on the fees received by Misny. Rather, Ms. Littlepage was paid 20 percent of

AWKO's fee, which did not change the amount that Misny received. Thus, regardless of whether this alleged misrepresentation occurred within the scope of the Agreement, there were no resulting damages to Misny.

Moreover, Plaintiff does not differentiate its alleged fraud damages from its alleged contractual damages. In each case, Plaintiff seeks at least $1.3 million in legal fees earned on HRT matters jointly represented by the Parties. (Id. ¶32, ¶47) Ohio law requires that "fraud damages be limited to the injury actually arising from the fraud. The tort injury must be unique and separate from any injury resulting from a breach of contract."*Medical Billing, Inc. v. Medical Management Sciences, Inc.*, 212 F.3d 332, 338 (6th Cir. 2000). In its opposition to summary judgment Plaintiff now asserts that he is entitled to choose either benefit of the bargain or out of pocket damages on a fraud claim where there exists a contract between the parties. Citing an unreported opinion from the Southern District of Ohio ruling on a motion in limine regarding damages available in an action with claims of fraudulent misrepresentation, fraudulent concealment and unjust enrichment, Plaintiff asserts that in a case where benefit of the bargain damages are available, a plaintiff is entitled to "the difference in the value between what a plaintiff has received and the actual value of what he would have received if the representations had been true." *Auto Chem Laboratories, Inc. v. Turtle Wax, Inc.*, 2010 WL 3769209 (S.D. Ohio Sept. 24, 2010). Plaintiff then asserts, without explanation or support, that he may seek benefit of the bargain damages in the amount of $1.3 million in fees owed. What Plaintiff fails to show however, is that the two alleged misrepresentations made by Defendant would have made any difference in the fees Misny received. Instead, the damages requested are duplicative of the damages Plaintiff seeks through its breach of contract claim.

-11-

Plaintiff notes that he could choose to recover out of pocket expenses on his fraud claim. The *Turtle Wax* court noted that in a situation where a plaintiff has suffered loss as a result of fraudulent conduct not involving a contract, the plaintiff is entitled to recoup his out-or-pocket expenses" which is "the pecuniary loss of which the fraudulent conduct was a legal cause or, in other words to be compensated for the loss they sustained and to be restored to their former position." Id. at *9. While Plaintiff claims that he paid almost $3 million in advertising and expenses, however, he has also received approximately $6,250,000 in fees from the HRT cases alone. Thus, Plaintiff cannot establish pecuniary loss, much less that it was caused by allegedly fraudulent conduct. Accordingly, Plaintiff's fraud claim will be dismissed.

Finally, Defendant moves for summary judgment on Plaintiff's claim for Quantum Meruit because quantum meruit is a "quasi-contract claim unavailable to a party to an express contract absent fraud or illegality." *Kott v. Gleneagles Prof'l Builders & Remodelers, Inc.*, 197 Ohio App.3d 699 (Ohio 6th Dist. 2012). As noted above, there is no fraud and Plaintiff has not made any allegations of illegality.

In response, Plaintiff states that it has asserted the equitable claim of quantum meruit as an alternative to its breach of contract claim and admits that it may not recover under both theories. However, in his quantum meruit claim Plaintiff seeks contract damages– that is, the value of the services it provided under the Agreement between the parties. The Agreement governs how the fees will be split between the parties. The Court has determined that there are material questions of fact concerning whether Defendant failed to pay Plaintiff as required by the Agreement. Thus, even if a jury finds in favor of the Defendant on Plaintiff's breach of contract claim, Plaintiff cannot simply assert that the contract was inequitable and recover instead on an

equitable claim. Ohio law is clear: "an equitable action in quasi contract for unjust enrichment [or quantum meruit] will not lie when the subject matter of that claim is covered by an express contract . . . The mere fact that issues exist as to the creation of the contract or the construction of its terms does not alter this rule. Thus, unless fraud or illegality occur, a party to an express agreement, which contains a provision governing the allegedly inequitable conduct, may not bring an unjust enrichment claim." *Yoder v. Paradigm Acquisitions*, 3d Dist. Defiance No. 4-03-01, 2003 Ohio 2564, ¶ 8 The parties all agree that there is an express contract between the parties, and there has been no showing of fraud or illegality. Accordingly, Plaintiff's quantum meruit claim must be dismissed.

For the reasons set forth above, Defendant's Motion for Summary Judgment (ECF #51) is denied as to Plaintiff's claim for breach of contract and granted as to Plaintiff's claims of conversion, quantum meruit and fraud. Defendant's Motion to Strike Declaration of Timothy Misny (ECF #60) is denied.

**2. Plaintiff's Motion for Summary Judgment on Defendant's Counterclaims for Quantum Meruit and Declaratory Relief and Motion for Default Judgment**

Moving first to Plaintiff's Motion for Default Judgment, Plaintiff alleges that Defendant submitted false affidavits to the Court asserting that Benjamin Anderson is not and has never been a partner or employee of AWKO, as part of its removal papers and/or motion to transfer venue to Florida. Even though the parties resolved the removal and transfer issues by stipulation dismissing Mr. Anderson and the other individual defendants and retaining venue and jurisdiction in this Court, Plaintiff asserts that default judgment is the only appropriate remedy for Defendant's alleged abuse of process. Defendant asserts that it did not submit false affidavits

to the Court. Mr. Anderson is not an employee or partner of AWKO. Rather, AWKO and Mr. Anderson entered into an Of Counsel Agreement Between Benjamin H. Anderson, Anderson Law Office, LLC and AWKO, which specifically provides that neither Mr. Anderson nor his employees shall be employees of AWKO. Thus, it does not appear that Defendant has submitted false affidavits to the Court, nor has there been any showing that Plaintiff has been prejudiced by any conduct of Defendant. As such, Plaintiff's Motion for Default Judgment (ECF #48) is denied.

Moving finally to Plaintiff's Motion for Summary Judgment on Defendant's counterclaims of quantum meruit and declaratory judgment, Plaintiff argues--while desperately trying to avoid the actual phrasing–that Defendant's quantum meruit claim, like Plaintiff's quantum meruit claim, is barred by the existence of the express Agreement between the parties which governs the fee split between the parties. Accordingly, Defendant's counterclaim for quantum meruit will be dismissed.

Finally, Defendant asserts a counterclaim seeking declaratory judgment that Misny is entitled to no more than 35% of the attorneys' fees earned in connection with the HRT mass tort claimants referred to AWKO by Misny. See ECF #37 at ¶ 23. However, the Court has already determined that there are material questions of material fact precluding summary judgment on Plaintiff's breach of contract claim. Specifically, the question of fee split percentages is one of the question of material fact to be determined by the jury. Thus, the Court cannot enter a declaratory judgment. The issues presented in this counterclaim for declaratory relief will be resolved at trial in the context of the breach of contract claim. Moreover, it is the Court's understanding that the Agreement between the parties has been terminated and there will be no

more referrals. Thus, no declaration of rights going forward is necessary. Accordingly, Defendant's counterclaim for declaratory relief will be dismissed. Plaintiff's Motion for Summary Judgment on Defendant's Counterclaims (ECF #48) is granted for the reasons stated herein.

## CONCLUSION

For the reasons set forth above, Defendant's Motion for Summary Judgment (ECF #51) is granted in part and denied in part. Genuine issues of material fact exist which make summary judgment inappropriate on Plaintiff's claim for breach of contract. However, there are no questions of material fact regarding Plaintiff's claims for conversion, quantum meruit and fraud and Defendant is entitled to summary judgment on those claims. Defendant's Motion to Strike the Declaration of Timothy Misny (ECF #60) is denied. Plaintiff's Motion for Default Judgment (ECF #48) is denied. Plaintiff's Motion for Summary Judgment on Defendant's Counterclaims (ECF #48) is granted. This case remains set for jury trial at 8:30 a.m. on January 30, 2017, on Plaintiff's breach of contract claim.

IT IS SO ORDERED.

/s/ Donald C. Nugent
DONALD C. NUGENT
United States District Judge

DATED: September 20, 2016